UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSUE BERNAL RODRIGUEZ,<br><br>Defendant. | Case No. 3:21-cr-002-LRH-CLB<br><br>ORDER |

Before the Court is Defendant Josue Bernal Rodriguez's ("Rodriguez") motion to suppress a firearm that law enforcement officers allegedly seized from an unlawful search and seizure (ECF No. 20). The government filed an opposition (ECF No. 24), to which Rodriguez replied (ECF No. 25). For the reasons articulated below, the Court denies the motion.

**I.  BACKGROUND**

Around 4:00 pm on November 4, 2020, Reno Police Department ("RPD") officers and Washoe County Regional Gang Unit officers responded to several reports of shots fired at the Community Garden Apartments in Reno, Nevada. ECF No. 20-2 at 8. On dispatch, the suspects were described as: (1) a black male, hair in dreadlocks, 25-30 years old, wearing a Raiders hat, white shirt, and black shorts or pants, and (2) a white male, late 30s, 180 pounds, wearing a black knit cap, black sweater, and black pants. *Id.* Upon arriving on scene, Officer Lopey was advised "that one of the individuals involved was walking southeast through a grassy area behind several apartment structures toward Cannan Street." ECF No. 20-4 at 3. Officer Lopey then "observed a male wearing a blue long sleeve shirt…walking southeast toward Cannan St." *Id.* After his arrival,

1

Officer Koger was advised by Officer Lopey that, "…there was a subject wearing a blue shirt, who may be involved walked toward [his] direction." *Id*. Officer Koger stated that the individual, later identified as Rodriguez, "…matched the general description of the involved subject, as he was a light skin [Hispanic male] wearing a dark blue and black plaid shirt." *Id*. Officer Koger also observed that Rodriguez, upon seeing him, abruptly turned and walked the opposite direction. *Id*.

Officer Koger followed Rodriguez and, as he exited his patrol vehicle, ordered Rodriguez to stop. *Id*. While not captured on body cam footage, Officer Koger reported that Rodriguez increased his pace and continued to walk away from him. *Id*. Officer Koger drew his sidearm and ordered Rodriguez to show his hands. *Id*. Rodriguez, with his hands raised, began to jog away. *Id*. At that point, two other officers arrived around the corner and Rodriguez was quickly detained. *Id*. After the officers had Rodriguez on the ground, they discovered a firearm in Rodriguez's waistband. *Id*. Rodriguez was initially arrested for carrying a concealed weapons without a permit and for disobeying a lawful order. *Id*. However, a records check revealed that Rodriguez was within the United States without legal status, and a grand jury subsequently returned a one-count indictment against Rodriguez for being a prohibited person in possession of a firearm. ECF No. 1.

Rodriguez now moves for suppression of the firearm officers seized as a fruit of an unlawful search and seizure unsupported by reasonable suspicion.

## II.   LEGAL STANDARD

The Fourth Amendment to the Constitution of the United States provides that: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . ." U.S. CONST. amend. IV. Any evidence resulting from an unconstitutional search or seizure cannot be admitted, and therefore must be suppressed. *See Wong Sun v. United States*, 371 U.S. 471, 485 (1963). "[W]arrantless searches and seizures are per se unreasonable" under the Fourth Amendment. *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012).

Still, it is well established that law enforcement may detain an individual and conduct a brief investigative detention if there is reasonable suspicion that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1 (1968). Reasonable suspicion is less than probable cause but requires more than

a mere hunch. *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Looking to the totality of the circumstances, reasonable suspicion turns on "specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that the particular person detained is engaged in criminal activity." *United States v. Hernandez-Alvarado*, 891 F.2d 1414, 1416 (9th Cir. 1989).

### III.   DISCUSSION

Rodriguez argues that (1) based on the suspected shooters' physical descriptions, Officer Koger lacked reasonable suspicion to detain him, and (2) his flight, by itself, is insufficient to establish reasonable suspicion. ECF No. 20. Because Rodriguez separated these arguments in his motion, each is addressed in turn. However, the Court still considers them as they relate to each other under the totality of the circumstances.

#### A.   Physical Description

Rodriguez argues that he did not match the physical description of the shooting suspects, and therefore Officer Koger lacked reasonable suspicion that Rodriguez had committed a crime. ECF No. 20 at 3. Dispatch informed Officer Koger that the alleged shooters were either a black male with a white shirt and black shorts or a white male wearing all black. ECF No. 20-2 at 8. Rodriguez insists that he did not match these portrayals of the suspected shooters, and the "generalized descriptions could have matched any number of men staying at the apartment complex that afternoon." ECF No. 20 at 4. Conversely, the government maintains that Rodriguez "matched the general description[s]" provided to the officers as "…a citizen told the officers where the person was walking who had been involved in the shooting." ECF No. 24 at 4.

Rodriguez cites to *Grant v. City of Long Beach*, 315 F.3d 1081, 1088 (9th Cir. 2002), *opinion amended on denial of reh'g*, 334 F.3d 795 (9th Cir. 2003) for the proposition that mere resemblance to a general description is not enough to establish probable cause for an arrest. In *Grant*, officers argued they had probable cause for an arrest because the defendant fit the general descriptions of the suspect from multiple victims. *Id.* The victims' descriptions were conflicting and described the assailant as being tanned to dark skin and either Hispanic or Caucasian. *Id.* The

Ninth Circuit found that these general descriptions of the suspect were too contradictory to give rise to probable cause. *Id.*

Here, however, the facts are readily distinguishable. As a threshold matter, *Grant* discussed the demanding probable cause standard required for an arrest stemming from generalized physical descriptions—not a *Terry* stop. And while Rodriguez relies on dicta from the Ninth Circuit for the proposition that generalized descriptions of a suspect are not enough even for a *Terry* stop, the Officers in this instance relied on specific details about Rodriguez's location before they approached. *See Washington v. Lambert*, 98 F.3d 1181, 1191 (9th Cir. 1996) ("…it is extremely questionable whether the tenuous general physical similarities between [the defendants] and the supermarket robbers give rise to even reasonable suspicion necessary to make a *Terry* stop.")  As recounted in the officers' reports, Officer Koger did not approach Rodriguez because of dispatch's generalized physical descriptions. Rather, Officer Koger told Rodriguez to stop because he received information from Officer Lopey that an individual wearing blue, who may be involved with the shooting, was walking toward him. ECF No. 20-2 at 8. Officer Lopey received the location of Rodriguez from witness accounts on scene. *See United States v. Sutton*, 794 F.2d 1415, 1426 (finding that reasonable suspicion can turn on the collective knowledge of all the officers involved in a criminal investigation). Thus, while Rodriguez did not match dispatch's generalized descriptions of the shooting suspects, he certainly matched the description that Officer Lopey provided Officer Koger.

### B. Flight

Rodriguez also argues that his flight from Officer Koger, by itself, is insufficient to establish reasonable suspicion. ECF No. 20 at 5. Rodriguez contends that his walking away from Officer Koger did not constitute an attempt to get away from pursuing officers, but rather, demonstrated a mere desire to avoid law enforcement contact. *Id.* at 7. The government responds that under the totality of the circumstances, including the unlawful shooting, Rodriguez's description, and Rodriguez's subsequent flight, the *Terry* stop was proper. ECF No. 24 at 4.

While flight from law enforcement officers is not necessarily indicative of a crime, it does give rise to some suspicion. *See Illinois v. Wardlow*, 528 U.S. 119, 125–25 (2000) ("[h]eadlong

4

flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but is certainly suggestive of such.") Moreover, as the Ninth Circuit recognizes, flight is an "admittedly significant" factor in a reasonable suspicion analysis. *United States v. Brown*, 925 F.3d 1150, 1155 (9th Cir. 2019) (citing *Wardlow*, 528 U.S. at 124)).

Here, the Court must examine the totality of the circumstances in analyzing reasonable suspicion and, in this case, finds that there was reasonable suspicion to perform a *Terry* stop on Rodriguez after he avoided Officer Koger. The officers in this instance were responding to multiple calls of shots being fired at the apartment complex—an indication that unlawful activity had just taken place. Once Officer Lopey received witness descriptions of a suspected individual's location, he relayed that information to Officer Koger. In turn, Officer Koger asked Rodriguez to stop once he spotted him at the identified location. However, instead of stopping, Rodriguez jogged away from Officer Koger and other officers even after he was told to stop multiple more times. Taken together with rational inferences from these facts, the officers had reasonable suspicion to detain Rodriguez. *Terry*, 392 U.S. at 21. Further, even if "the conduct justifying the stop was ambiguous and susceptible of an innocent explanation ... *Terry* recognized that the officers could detain the individuals to resolve the ambiguity." *Wardlow*, 528 U.S. at 125 (2000).

Accordingly, the Court will deny the motion to suppress as there was, under the totality of the circumstances, reasonable suspicion to stop Rodriguez.

### IV.   CONCLUSION

IT IS THEREFORE ORDERED that Rodriguez's motion to suppress (ECF No. 20) is **DENIED**.

IT IS SO ORDERED.

DATED this 2nd day of September, 2021.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE